HANSON v. SJOSTROM.

(Circuit Court of Appeals, Eighth Circuit. September 9, 1919.)

No. 5387.

1. PRINCIPAL AND AGENT ☞69(4)—AGENT FOR SALE OF PROPERTY CANNOT PURCHASE FOR HIMSELF.

An agent representing his principal in the sale of property is not permitted to purchase it for his own benefit, directly or indirectly, without his principal's consent; and a purchaser from him, with notice of his illegal purchase, stands in no better position, and the principal may recover, at his option, the profits made by such purchaser as a trust fund.

2. PRINCIPAL AND AGENT ☞69(4)—AGENT LIABLE FOR PROFITS FROM ILLEGAL PURCHASE OF PRINCIPAL'S PROPERTY.

An agent for sale of land, who sold through a subagent and afterwards bought part of the subagent's interest in the land, which the latter indirectly purchased for himself, with knowledge that it was so acquired, held liable in a suit by the principal for accounting for the profit made thereon, but not for the capital which he invested.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in equity by J. P. Sjostrom against Henry E. Hanson. Decree for complainant, and defendant appeals. Modified and affirmed.

O. J. Finstad, of Windom, Minn. (S. B. Wilson, of Mankato, Minn., on the brief), for appellant.

Albert R. Allen, of Fairmont, Minn. (Leo J. Seifert, of Fairmont, Minn., on the brief), for appellee.

Before SANBORN, Circuit Judge, and MUNGER and YOU-MANS, District Judges.

MUNGER, District Judge. The plaintiff brought suit against the defendant for an accounting, and recovered judgment, and the defendant has appealed. The plaintiff's bill alleged that he had appointed defendant as his agent to sell and convey and manage his lands, and that defendant had leased the lands for a period of years, and then had sold them and collected the purchase price, but had failed and refused to render to plaintiff an account of his transactions,. or to pay over the proceeds of the leases or sales, and prayed that defendant be required to account for all dealings with plaintiff's property, and to pay plaintiff $10,000 and any residue that might be due plaintiff in regard to the agency transactions.

The answer of the defendant was, in effect, a claim that he had fully accounted to plaintiff for all his transactions and had paid him all that was justly due. The plaintiff is a citizen and resident of Sweden. His son was a resident of Cottonwood county, Minn., and died intestate there in 1905, owning a large amount of land in that county, and leaving plaintiff as his only heir. The probate court of Cottonwood county appointed the defendant as administrator of the estate, and he qualified and acted as such administrator for about five years, when his accounts were approved, he was discharged, and the administration closed. The defendant resided at Windom, in Cottonwood county. About two years after he was appointed administrator, he obtained from the plaintiff a power of attorney, authorizing him to lease, sell, and convey the lands. He made some effort to sell the lands and employed as a subagent for that purpose one D. A. Stuart, an attorney of Windom, who also acted as attorney for the administrator in the general conduct of the estate. Stuart reported to the defendant that he had found a purchaser who would buy the land in the person of a Mr. Clark, a banker at Windom.

The defendant made a deed of conveyance to Clark, part of the purchase money was paid down, and payment of part was deferred. By all the testimony on the subject, the lands were sold for their full value at that time. While the legal title was conveyed to Clark, there was an agreement between Clark and Stuart by which Stuart was to have a share in the ownership of the lands. Very soon after the deed was executed by defendant to Clark, there was an agreement between Clark and Stuart by which it was determined that Stuart was to own two-thirds and Clark to own one-third of the lands, although the legal title was to remain in Clark.

The defendant filed his final account as administrator about four months after he had made the conveyance to Clark, and it was approved in five weeks thereafter. The defendant made final payment of the balance which he claimed was due to plaintiff arising from the lease and sale of the lands under the power of attorney two months after he was discharged as administrator. Three months after making this payment he entered into negotiations with Stuart by which he became the owner of a one-third interest in the lands, purchasing half of Stuart's interest and paying therefor $1,000 more than it had cost Stuart. Clark afterwards conveyed the land to intermediary, but nominal, grantees, who reconveyed to Clark, Stuart, and defendant, and later the land was sold and a large profit realized by each of these grantees.

The trial court required the defendant to account to plaintiff for the profits he had made, and also to account for the profits made by Stuart, and refusing credit to defendant for the $1,000 which he paid to Stuart for the purchase of his one-third interest.

[1] Appellant does not strongly urge that he was not liable to account to plaintiff for the profit he made between the purchase price and the sale price of his one-third interest, and such a claim could not well be supported. An agent representing his principal in the sale of property is not permitted to purchase it for his own benefit, directly or indirectly, without his principal's consent. Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Robertson v. Chapman, 152 U. S. 673, 14 Sup. Ct. 741, 38 L. Ed. 592; Warren v. Burt, 58 Fed. 101, 7 C. C. A. 105; Baker v. Schofield, 221 Fed. 322, 136 C. C. A. 320; 2 Pom. Eq. Jur. §§ 958, 959; Mechem on Agency, § 461.

A purchaser of such property from the agent, unless he has no notice of the fact of the agent's purchase of his principal's property for his own benefit, stands in no better position than the agent, and the principal may recover, at his option, the profits made by such purchaser, as a trust fund belonging to the principal. 3 Pom. Eq. Jur. §§ 1048, 1052; United States v. Carter, 217 U. S. 286, 30 Sup. Ct. 515, 54 L. Ed. 769, 19 Ann. Cas. 594; Central Stock & Grain Exchange v. Bendinger, 109 Fed. 926, 48 C. C. A. 726, 56 L. R. A. 875; Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176; People v. Open Board, 92 N. Y. 98; Cumberland Coal & Iron Co. v. Sherman, 30 Barb. (N. Y.) 553.

[2] The defendant failed to show any lack of notice that Stuart had purchased his principal's property while acting as agent for its sale. The title stood in the name of Clark by virtue of the deed that defendant had executed as plaintiff's attorney in fact, and yet defendant purchased his interest from Stuart, knowing that he had no record title, and there is no suggestion that Stuart's purchase was not of his principal's property. The amount of profit which defendant made by reason of his purchase of a share in these lands was $3,300. He is not required to account to his principal for the capital he invested in such purchase, and hence was not liable to pay to his principal the $1,000 which he invested in purchasing the land. Such a payment was for the benefit of his principal, if he chose to ratify it, as he has

done, and hence he was entitled to be reimbursed therefor out of the proceeds of the sale.

In support of the portion of the decree requiring defendant to account to plaintiff for Stuart's profits, appellee claims that a conspiracy was entered into between defendant and Stuart whereby Stuart was to purchase the land for the joint benefit of the conspirators, and because of this agreement the principal is entitled to recover the entire profits from one conspirator. The evidence does not disclose any such conspiracy, nor show any knowledge on the part of the defendant that, at the time he made the conveyance to Clark, he was aware that Stuart was interested as a purchaser.

The claim for the recovery of Stuart's profits is not within the issues as presented by plaintiff's bill. The theory of the bill is not that defendant negligently permitted plaintiff's lands to be purchased by another agent, causing him loss, but that defendant leased and sold plaintiff's lands and collected the purchase price, and has failed to pay the proceeds to plaintiff. No claim is made that there is any testimony tending to show that plaintiff received any portion of the profits made by Stuart, so this portion of the decree is not supported by the pleadings and evidence.

An order will be made, modifying the decree and allowing to plaintiff the amount of the profits made by the defendant in the sum of $3,300, with interest from December 31, 1913; the costs of this appeal to be taxed to appellee.